181727 Frank Staples v. Richard M. Gerry et al. Thank you. May it please the Court, I'm Donna Brown and I represent Frank Staples. If I may, Judge, I'd like to reserve two minutes at the end for rebuttal. Yes. Thank you. I'm quoting from one of the cases in the State's brief, which is Norton v. City of Marietta, which I think is very applicable to this case. It's at page 45. It says that cases involving constitutional or civil rights are frequently unsuitable for summary judgment because the necessary element in a claim of relief presents an issue of intent. And that is the case here. And that is why the district court judge erred in granting summary judgment because he did not consider the facts favorable. He found on all of the facts of record that no reasonable jury could find that the subjective malicious intent was made out here. Correct. And in doing that... And that's common. Correct, it is, Your Honor. Okay, so what's wrong with those rulings? Basically what the judge was doing is looking at the evidence in a light most favorable to the defendant. He was taking the correctional officer's point of view, which is their claim, which we dispute, is that they were using the force in question to restore order and restore some sort of semblance in a situation. We dispute that. Well, he doesn't dispute that he tore up the paper. He doesn't. And he doesn't dispute that he refused to come out of his cell to be transferred to another block. Correct. Let me deal with the paper issue first. He does not dispute that. But all of these cases, and we've both cited a lot of cases, really hinge on the issue of intent. And so there is a big difference here. And the two big cases are from the United States Supreme Court, the Hudson v. McMillan case, which talks about intent and, you know, wanted and sadistic acts. It really comes down to this issue. And so the tearing of the paper, if it was as the officer claimed, Officer Parent, then we would agree. But it's not as Officer Parent said. What Officer Parent was doing was trying to set up Mr. Staples as a protective custody inmate, which is described in here, would label him as a snitch and a rat or even a sex offender and would subject him to not only brutality and assaults, but Mr. Staples even references fear of murder because that had happened in the prison. So the intent of the officer is critical to this case. And that's the Norton v. Marietta case. It's exactly what happened there. But that's still presuming that the officer expected your client to tear up the paper. I mean, assuming that was his intent, it's your client's response to whatever the officer's intent was. That is the problem. It is not, Your Honor. He didn't have to sign the paper, but he didn't have to tear it up either. He actually did, Your Honor, and he explains this in his deposition in the motion. They couldn't force him out of the cell, but you're saying they could have forced him? He'd rather take pepper spray than exit the cell. I was talking about Mr. Parent. Would you say that they could have forced him to sign the paper? I'm talking about Mr. Parent's situation because my client took that piece of paper, knowing there were six inmates standing next to him who knew if he was a snitch, could assault, murder, or sexually assault him. And so he ripped up that paper to let them know, because what happened leading up to the piece of paper? Mr. Parent takes the piece of paper and hands it to my client, Mr. Staples, and says loudly, tell me why you don't want to be PC. He's saying that for these other inmates. I'm sorry, I thought your client had to do with the encounter with the concrete pillar. It does, Your Honor. So why don't you link the two together? Because I think otherwise you're abandoning that aspect of your claim. And the claim is an affidavit claim of the use of force, and whether that force was applied sadistically and wantonly, or it was applied to restore order or for some penological purpose. And we are saying that it was applied sadistically and wantonly for this officer who was trying to exert control over this person. Suppose that he hadn't been forced up against the concrete. Do you still have an Eighth Amendment claim? I have the mere statement in front of others that you're going to be transferred to the PCU. There's actually a case in this court, Your Honor. Answer my question. Yes, no. Yes, Your Honor. And there's two cases that support that claim. One is out of this court, Giroux v. Somerset County, which is a 1999 case. I think it's cited in my brief, which talks about the... Okay, so the concrete encounter drops out of the case. Your case is really about the PCU, the statement that is made. Can you give me any case in which a statement made to an inmate is an Eighth Amendment violation? A statement alone, no, I haven't, Your Honor, that there have been cases where even less force has been an Eighth Amendment violation. There's a case, Pelfrey v. Chambers, which is at 43 F. 3rd, 1034. It's at the Sixth Circuit. In that case, the officers held the defendant and gave him a haircut. No injuries whatsoever. And the Sixth Circuit found that to be an Eighth Amendment violation because the purpose, and again, this goes back again over and over to the intent, it's so critical in these cases, the purpose was to degrade and frighten the inmate. And he was degraded and frightened. But we have much more than that than the cutting of hair here. We have slamming face first into a concrete pillar after trying to set up this inmate in a protective custody situation. And so that is why this is looking at all the facts in the totality. Is the idea that because of the comment about the PCU, the response when he rips it up is a way of saying, I'm not a snitch? Exactly. Okay, so just so I get your account. And that the officer had no, there's no way to read the record in any indisputable way where the officer really thought he had to exert control at that moment. And therefore the only way to understand the shove is as a wanton and punitive act. In fact, your Honor, I would think the best way to characterize this pushing him face first into the pillar was that not only was the parent trying to avoid a situation of disruption, he was creating it. That's what he was doing. He was creating a disruptive situation where labeling an inmate in front of six other inmates as a protective custody. Just playing out that logic. Certainly there's some reactions in response to the PCU statement that an inmate could have where some shoving or force would then be needed to be used to restore order, right? So is your point just that his action in ripping up the paper was not enough to plausibly lead a jury indisputably to the conclusion that order needed to be restored rather than this was all part of a plot too? And I see my time is up if I can answer that question. And to answer your question, that it has to be looked at in total. Because what happens before governs the intent here. And as I just said, that the officer parent was not trying to restore order. And there's just a credibility issue that a jury needs to hear about this. He was trying to create disorder. Counsel, you have your two minutes reserved. Thank you. Could you answer Judge Barron's question though? I'm anxiously waiting for you to answer Judge Barron's question. Which you didn't answer. And maybe I misunderstood that. And if I understood your question, which was whether if the ripping of the paper alone is what, whether that would have been an Eighth Amendment. And I'm sorry, I may not have understood your question. Well, you agreed with me that regardless of the motive of the officer in making the PCU comment, there is some response that the defendant, or the plaintiff here, could have made that would have entitled the officer to then respond by using force. And it may be that the force, which is a separate issue, took a form that resulted in him hitting the concrete pillar. But if you just looked at the action alone, that wouldn't look like a sadistic force. But you're saying if you look at the motivation for it, it does. And that seems contingent on the action of the plaintiff, being of a type that would make it so that a jury just couldn't plausibly say, well, no one in that situation should be reacting that way. You'd have to react with some use of force. And thank you for repeating the question. You're saying that ripping up the paper is not alone enough. No. And so, using your scenario, if after ripping up the paper, Mr. Staples then charges the officers, and then we've got a melee, we've got other inmates responding, obviously the use of force would be easier. If it all turns on that, then why wouldn't this be potentially a good case for qualified immunity, which would just be given the level of clarity that the law would have to have about what types of reactions are enough to engender response and what aren't, why wouldn't we be able to just say in this case that unless you've got some authority that suggests when an inmate countermands an order in this kind of defiant manner, it's absolutely clear that you can't use force at that moment. And you're talking about the second prong of the qualified immunity. Because in this case, the inmate is not, the inmate is responding to a situation that was created for disruption, which is, again, our position as to parent. Judge Thompson pointed out to you there were a number of alternatives. He could have handed it back, said I'm no snitch. He could have done any number of things, but he did not. And once there are a series of alternative actions, and the officer is aware he doesn't take any of those alternative actions, why isn't that a case for qualified immunity? As I said, I mentioned there's a case previously about labeling snitches, so he would have been unnoticed as to that part. And the case law, the two Supreme Court cases that I have cited on this, are very clear that it's the intent. And parent would have known that if he is doing this with a malicious and wanting intent, I'm not on qualified immunity. You have your two minutes left. Thank you. Good morning. Frank Leverts from the New Hampshire Attorney General's Office for the Defendants. To jump right in, whipping up the paper is enough to justify being briefly pushed against a wall and handcuffed, especially when the officer doesn't have familiarity with the inmate, when the inmate who is defying orders and whipping up the paper is not handcuffed and is coming to this order from maximum security. It is a reasonable approach and beyond intent as to both claims. I'm making the argument in the alternative to what the trial court found out. It's de minimis use of force in each instance. There's a case I'll cite throughout my brief where officers have performed a similar maneuver to restrain an inmate and courts have held that that was de minimis, not even a constitutional question, not objectively harmful enough to constitute cruel and unusual punishment so you don't get to the mental state of the officer. There's no retaliation claim as to this aspect of the suit, right? No. And to touch upon another question that the court raised, there can't be a stand-alone Eighth Amendment claim based on the labeling, alleged labeling of this inmate as potentially protective custody because there's no causal connection to any subsequent injury from other inmates assaulting him or any other mistreatment. So you don't have a causal connection to any injury. And more basic than that, that was not a claim that has been in the case. Do you want to spend a few minutes on the other officer? Yes. The pepper spray, this procedure where an inmate is refusing to exit the cell and then pepper spray is deployed to make the cell unpleasant, to make the inmate come out, I've provided case law from many courts that that is an accepted practice. It was reasonable. The trial court found it was reasonable. Certainly with the body of case law accepting it, there's qualified immunity. Was there a claim brought below that not the mechanism for moving the inmate but the decision to move the inmate at all, was it self-retaliatory? There is a retaliation claim. There's a retaliation claim that's on appeal that the use of the pepper spray was retaliation. There's references into the brief on appeal to the decision to move the inmate in the first place to what's it called, tier one? I-tier. I-tier, to I-tier. Correct. Itself being potentially a retaliatory action for the prior First Amendment litigation. Was that raised below? I'm not sure that there's, factually, I guess it's somewhat encompassed, but I don't believe that that's a claim. I think the claim was excessive force for being pepper sprayed, that the pepper spray was retaliation. I can tell you from the record that the officers wanted to move this plaintiff to I-tier because there were cameras in those cells and he had a history of making improvised alcoholic beverage and would make it in such a way that it couldn't be seen from outside of the cell, so they wanted him on camera. That's why they chose I-tier. And after the pepper spray didn't result in the plaintiff coming out, they decided to negotiate Fordeaux I-tier, bring him to a different tier to avoid further uses of force. And then he was offered a shower and moved. With that, I can conclude. Okay. Thank you. I'd like to briefly just address the second claim as well, and specifically the retaliation claim. And another case I would want to refer to is Hammond v. Beard, which is a case from this court, 645 F. 3rd 45. It's cited in my brief. And in that case, it talks about direct proof of a retaliatory motive is not essential to make out a prima facie case. In some cases, circumstantial evidence will suffice or deviation from standard operating procedure. In this case, there is evidence, not direct evidence, but of a causal relationship. We have an officer using pepper spray who was subject of a pending lawsuit by Mr. Staples. We have an officer who's using pepper spray against him who had previously made intimidating remarks to Mr. Staples about his assertion of his constitutional rights. We also have an officer who's using pepper spray against a prisoner who had recently prevailed in federal court by gaining a preliminary injunction. This is just like ripping up the paper. Certainly, even if all that's true, there are circumstances in which the action by the plaintiff inmate can be of a kind that would make it so that it would be clearly reasonable for an officer to use pepper spray. It's not like you get an immunity from being subject to actions that are forcible against you just because you filed a suit before. So then the question again becomes, is the action of the inmate here of a type where there's any reason to conclude that it was clear that using pepper spray in response to those actions is impermissible? Well, Your Honor, I think there is an answer to the question, which is that one of the things we claimed is that the officer in question, in this case Marshall, did not follow their own prison procedures regarding the use of force, and this is considered a use of force. And so therefore, that's one more evidence, and I was citing to that same case, that not following procedures can be indirect evidence of intent, and we would ask the court to consider that. Thank you. Thank you. Thank you.